MICHAEL N. MILLS (SB #191762)
michael.mills@stoel.com
SARAH M. TAYLOR (SB #296520)
sarah.taylor@stoel.com
DANIEL L. QUINLEY (SB #312579)
daniel.quinley@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

Attorneys for Proposed Intervenor
Sentinel Peak Resources California LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | Case No. 3:19-cv-07664-JCS <br><br> DECLARATION OF JEREMY VANDERZIEL IN SUPPORT OF SENTINEL PEAK RESOURCES CALIFORNIA LLC'S MOTION TO INTERVENE <br><br> Action Filed: Nov. 21, 2019 <br> Hearing Date: Jan. 24, 2020 <br> Hearing Time: 9:30 a.m. <br> Courtroom: G <br> Judge: The Honorable Joseph C. Spero |

I, Jeremy Vanderziel, hereby declare and affirm as follows:

1. I am the Coastal Asset Manager for Sentinel Peak Resources California LLC ("Sentinel Peak") and have served in that position since December 2016. I make this declaration in support of Sentinel Peak's Motion to Intervene in the above-captioned litigation. I have personal knowledge of the matters stated below, and I am authorized and competent to make this declaration.

2. As Sentinel Peak's Coastal Asset Manager, I manage Sentinel Peak's Coastal assets including Sentinel Peak's Lompoc and Arroyo Grande assets, supervising the operational and technical staff for the respective oil fields. I have approximately 15 years of engineering work experience with 10 years in the upstream oil and gas industry and have been employed by

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

DECL. OF JEREMY VANDERZIEL IN SUPPORT OF MOT. TO INTERVENE

-1-

3:19-CV-07664-JCS

103693869.6 0065705- 00015

1  Sentinel Peak for three years. I hold a Civil Engineering degree from California Polytechnic
2  State University San Luis Obispo and a Master of Business Administration degree from the
3  University of Oklahoma.

4  3. Sentinel Peak is California's fourth largest onshore oil and gas producer,
5  producing approximately 30,000 barrels of oil equivalent each day. Sentinel Peak operates in San
6  Luis Obispo, Santa Barbara, Kern, and Los Angeles Counties.

7  4. Sentinel Peak assumed ownership of the Arroyo Grande Oil Field (the "Field") in
8  December 2016 from Freeport-McMoRan Oil and Gas ("FM O&G"). Sentinel Peak's staff
9  oversees operations in the Field in accordance with the terms of permits issued by San Luis
10 Obispo County (the "County") and other regulators. Sentinel Peak is the sole operator of the
11 Field.

12 5. The first oil production in the Field came from surface mining operations that
13 quarried 150,000 tons of tar sands between 1880 and 1922. Since 1919, the Field has been a
14 State-designated oil field, has produced approximately 21,000,000 barrels of oil, and is currently
15 the sixth largest producing oilfield in the Coastal District of the Division of Oil, Gas, and
16 Geothermal Resources of the California Department of Conservation ("DOGGR").[1] The Field is
17 currently producing approximately 1,600 barrels of oil per day. The producing area of the Field is
18 approximately one mile wide by one mile long, with major production facilities located in the
19 central and northern areas of the approximately 1,600-acre oil field.

20 6. Crude oil produced at the Field is "heavy," meaning the oil is viscous and cannot
21 easily flow to production wells through the reservoir under native reservoir conditions. Produced
22 water, on the other hand, containing trace amounts of hydrocarbons flows more freely than the oil
23 and the result is that approximately 20 barrels of water accompany every barrel of oil produced.

24 7. To address the heavy, viscous oil at the Field, thermally enhanced oil recovery
25 techniques have been applied since the 1960s to reduce the viscosity of the oil by increasing its

---

[1] Department of Conservation, 2018 Report of California Oil and Gas Production Statistics, pp. 9-10 (Oct. 1, 2019), https://www.conservation.ca.gov/dog/pubs_stats/annual_reports/Pages/annual_reports.aspx.

temperature. This involves steam injection via permitted injection wells into the Field's one productive hydrocarbon bearing reservoir called the Dollie Sands (located in the larger Pismo formation). Steam injection plays an extremely important role in the successful economic production of oil at the Field. Absent steam injection, oil would not flow to producing wells in marketable quantities.

8. The injected steam creates a "steam chest," which consists of a volume of steam that is trapped within the reservoir. This, in turn, maintains the level of pressure and temperature necessary for the extraction of oil at a favorably high rate of recovery. The presence of steam allows for a significantly higher percentage of oil extraction than would otherwise be possible. The main steam chest is centralized in the Field and grows outward by expanding along the periphery. Injecting steam in the periphery of the established steam chest is essential to sustaining and increasing the Field's oil production. Continued steam injection throughout the lifecycle of the oil recovery process is required to maintain the steam chest, without which the steam chest would condense due to heat loss, and the ultimate recovery of oil from the reservoir would be reduced.

9. On August 9, 2005, the County approved Conditional Use Permit D010386D, which included a field-wide Environmental Impact Report ("EIR") per California Environmental Quality Act ("CEQA") regulations and authorized the fourth phase build-out of the Field over a 10-year period ("Phase IV"). From 2005 to 2015, a total of 63 new production wells, 31 new steam injection wells, and five new water disposal wells were installed as part of Phase IV.

10. In 2015, FM O&G sought a time extension from the County to complete Phase IV. On November 17, 2015, the County Planning Commission granted FM O&G's request. This time extension would allow the remaining 20 new production wells, eight new steam injection wells, and three new water disposal wells under Phase IV to be constructed within three years from when the extension is granted.

11. Meanwhile, as part of a comprehensive update to California's exempt aquifers under its Class II Underground Injection Control ("UIC") Program, several operators throughout the State initiated aquifer exemption applications through the DOGGR. Therefore, in August

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

DECL. OF JEREMY VANDERZIEL IN
SUPPORT OF MOT. TO INTERVENE

-3-

3:19-CV-07664-JCS

103693869.6 0065705- 00015

2015 FM O&G submitted an application for the Arroyo Grande Aquifer Exemption (the "Aquifer Exemption") to DOGGR to more fully delineate the exempt aquifer contained within the Dollie Sands of the Pismo formation underlying the Field. DOGGR conducted public hearings and reviewed written comments on the application in conjunction with the State Water Resources Control Board through December 6, 2015. On February 8, 2016, DOGGR submitted the Aquifer Exemption application to EPA.

12. Under California's UIC program, an operator must apply to DOGGR, as well as the County of San Luis Obispo, for approval to drill an injection well. For DOGGR to grant such a permit, EPA must have determined that the formation into which the proposed injection would be made is an exempt aquifer. Accordingly, Sentinel Peak cannot drill necessary new and replacement injection wells in the Field without the Aquifer Exemption.

13. Immediately after FM O&G initiated the Aquifer Exemption application, in November 25, 2015, the Center for Biological Diversity ("CBD") filed an appeal to the County Board of Supervisors seeking review of the time extension approval for the Phase IV build-out. Because an adverse decision would have detrimentally affected Sentinel Peak's continued ability to pursue the remaining wells under Phase IV, the County Board of Supervisors subsequently stayed the appeal hearing until after EPA issued its decision regarding the then-proposed Aquifer Exemption application.

14. On December 8, 2017, DOGGR submitted supplemental information to EPA that effectively reduced the size of the proposed boundary for the Aquifer Exemption area. DOGGR solicited public participation on the supplemental information until December 22, 2017, and submitted the amended Arroyo Grande AE application to EPA on June 8, 2018.

15. On April 30, 2019, EPA issued a Record of Decision approving the Aquifer Exemption. Now that the Aquifer Exemption has been granted, the hearing for the appeal to the County Board of Supervisors described above will likely occur in the first quarter of 2020.

16. The steam chest that has formed in the Field is critical to the economic production of oil from the Field. If the steam chest is not maintained, individual production wells will decline over time. In order to maintain the steam chest, Sentinel Peak must drill new and replacement

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

DECL. OF JEREMY VANDERZIEL IN SUPPORT OF MOT. TO INTERVENE

-4-

3:19-CV-07664-JCS

103693869.6 0065705- 00015

injection wells in the Field, as contemplated by the remaining Phase IV plans. This is particularly critical now that the time extension appeal hearing was stayed for over four years. The steam chest is approaching a critical point of needing replenishment through the development of new and replacement injection wells.

17. I understand that CBD's Complaint in this litigation requests an order setting aside EPA's approval of the Aquifer Exemption. If that were to occur, Sentinel Peak would be unable to drill the necessary new and replacement injection wells described above or obtain new permits for such wells until EPA addressed any deficiencies identified by the Court. If new and replacement injection wells are not drilled, the steam chest described above would condense. This would result in substantial economic harm to Sentinel Peak associated with a significant decline in oil production from individual wells in the Field, as well as significant costs to re-establish the steam chest.

18. In addition to the significant direct economic harm associated with a decline in oil production from the Field, an order setting aside the Aquifer Exemption would result in the following additional harms to Sentinel Peak:

    a. Sentinel Peak operates a Water Reclamation Facility, which desalinates large volumes of water produced from the Field and then beneficially discharges that water to Pismo Creek. If Sentinel Peak is unable to drill necessary new and replacement injection wells, then the produced water from the Field will decrease, which, in turn, will reduce the beneficial discharge of treated produced water from the Water Reclamation Facility to Pismo Creek. The Water Reclamation Facility also relies on produced water injection wells to maintain its operation by injecting excess produced water back into the hydrocarbon bearing reservoir. If Sentinel Peak is unable to drill necessary new and replacement produced water injection wells the operating capability of the Water Reclamation Facility would be decreased. As a result, Sentinel Peak's economic realization of its multi-million dollar Water Reclamation Facility would be jeopardized.

    b. Sentinel Peak beneficially reuses approximately 450 mmcfs per day of landfill gas from the Cold Canyon Landfill to produce steam that is injected into the Field. If

Sentinel Peak is unable to drill necessary new and replacement injection wells, then its ability to manage this community-generated source of greenhouse gases will be impaired.

      c.      Sentinel Peak currently transports approximately 1,600 barrels of produced crude oil from the Field each day via pipeline to the Phillips 66 refinery in Nipomo. Because crude oil from the Field comprises a substantial portion of the flow in this pipeline, a reduction in produced crude oil from the Field (as a result of a court order setting aside the Aquifer Exemption) would impair the pipeline's ability to operate at its designed rate and temperature. With a reduction of a few hundred barrels per day of oil from the Field, Sentinel Peak would have to resume shipping oil to the Phillips 66 Nipomo refinery by tanker truck due to volume constraints imposed by the reduction in volume of produced oil from the Field. This, in turn, would result in another significant economic cost to Sentinel Peak, placing the economic operation of the Field at risk. The use of tanker trucks to transport crude oil would also increase greenhouse gas emissions and increase traffic volume on local roads and highways.

19.    In sum, Sentinel Peak has a significant and direct stake in this litigation. As described above, if CBD is successful in this litigation, Sentinel Peak will be substantially harmed. Specifically, if CBD obtains a court order setting aside the Aquifer Exemption, Sentinel Peak will be unable to obtain permits to drill necessary new and replacement injection wells in the Field, which will result in significant economic losses associated with reduced oil production from the Field and other related adverse impacts to Sentinel Peak's operations. More broadly, these harms will jeopardize Sentinel Peak's substantial economic investment in the Field and its ability to maintain the Field as an economically viable enterprise.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information and belief.

EXECUTED this 17TH day of December, 2019, at Bakersfield, California.

1
2  By: _____
3  JEREMY VANDERZIEL
   Sentinel Peak Resources California LLC
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

DECL. OF JEREMY VANDERZIEL IN
SUPPORT OF MOT. TO INTERVENE     -7-                     3:19-CV-07664-JCS

103693869.6 0065705- 00015